# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00647-CR
### NO. 03-06-00659-CR

**John Lopez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NOS. 5020353 & 3021616, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In a consolidated proceeding from two separate indictments, a jury convicted John Lopez of two counts of the first-degree felony offense of aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B) (West Supp. 2006). The trial court assessed and sentenced appellant to sixteen years' confinement for both offenses and ordered that appellant's sentences be served concurrently.

In four points of error, appellant contends that the trial court committed harmful error in not severing the trials of the two causes, he received ineffective assistance of counsel, he was denied his right to a fair trial and due process because of prosecutorial misconduct, and the trial court committed harmful error in admitting lay opinion testimony. For the reasons that follow, we affirm the judgment of conviction.

## FACTUAL BACKGROUND

Appellant was indicted on two separate counts of aggravated sexual assault of a child. Count one of the first indictment alleged aggravated sexual assault of L.M., a child younger than fourteen, by digital penetration of L.M.'s sexual organ on or about August 15, 1996. Count one of the second indictment alleged aggravated sexual assault of B.S., a child younger than fourteen, by the digital penetration of B.S.'s anus on or about May 20, 2000. Both indictments also included a second count for the lesser offense of indecency with a child by contact.

Because appellant does not challenge the sufficiency of the evidence, we briefly summarize the facts. The evidence showed that at the time of the alleged respective offenses, B.S. and L.M. lived within several blocks of the appellant's house and had close relationships with the Lopez family, including appellant's daughter, stepdaughter, and in particular, his wife. B.S. and L.M. both spent a lot of time at appellant's house, including spending the night on occasion but never at the same time. They met each other at appellant's house a few times, but they hardly knew each other.

The alleged assault on B.S. was the first of the two to be reported to the police. B.S. alleged and testified at trial that one weekend in May 2001,[1] when she was twelve and in sixth grade, B.S. was spending the night at appellant's house, and she was awakened by appellant's hands in her pants and his finger inside her anus. She testified they had a brief conversation after he removed his hand before he left the room; he told her she should not tell anyone and she would "make a man very

---

[1] The indictment refers to May 2000 as the date that the assault occurred. The discrepancy in dates was brought out by the defense at trial to discredit B.S. and her allegations against appellant.

2

lucky one day." B.S. testified that she did not tell anyone at the time what had happened but that she later did tell one of her friends. Appellant denied B.S.'s allegations at trial.

The Lopez family moved from the area within a few months of the alleged assault on B.S. The testimony was disputed whether B.S.'s relationship with the family changed after May 2001, but she did not maintain her relationship with the family after they moved. The following school year, when B.S. was in the seventh grade, she began having serious behavioral problems, including suicide attempts and cutting herself with razors and broken glass. She was placed in counseling. In or around April 2002, B.S. told her mother what appellant had done to her the previous year. Her mother then reported the assault to the police despite B.S. asking her mother not to report it. The allegations were investigated and the first indictment against appellant issued in August 2002.

The alleged assault on L.M. occurred on or about August 15, 1996, when she was babysitting at appellant's house. L.M. testified that she babysat for appellant's daughter and stepdaughter starting when she was ten or eleven and she would spend the night sometimes when she was babysitting. L.M. was around the same age B.S. was at the time appellant allegedly assaulted her. She testified that on the evening in question, after she had fallen asleep on the couch, she was awakened by appellant's dog licking her face, and that appellant walked over to her after putting the dog out, pulled down her shorts and underwear, and put his fingers inside her vagina. She testified that she made a noise, that appellant "shushed" her and continued moving his fingers in and out a few more times before he left to go to the bathroom. She testified that after he left, she pulled her shorts and underwear back up and "just froze, and [] didn't know what to do after that."

3

He came back after being in the bathroom and asked her if she was "okay." After she nodded her head, he said "are you sure, and [she] said uh-huh" and then he left her to go back upstairs. Appellant also denied L.M.'s allegations.

L.M. testified that she did not tell anyone what had happened at the time, but she told two friends on separate occasions a few years later, asking both friends not to tell anyone.[2] Similar to B.S., it was disputed whether L.M.'s relationship with the Lopez family changed after the alleged assault in 1996, but L.M. continued to babysit for appellant and his wife until they moved from the neighborhood.

In 2002, when she was visiting the Lopez family after they had moved, L.M. learned that B.S. had made allegations against appellant. During the same visit, a caseworker from Child Protective Services came to the Lopez house and questioned her alone. The testimony was disputed what she told the CPS worker, but she did not tell the worker that appellant had done something similar to her. Around the same time, in response to B.S.'s allegations, appellant's wife told L.M. that B.S. "wasn't an honest girl," and she sought a letter from L.M. along with others in support of appellant's character. L.M. initially provided a letter in support, but she later asked appellant's wife not to use the letter. L.M.'s motive for changing her mind about the letter was disputed.

At some point after learning that B.S. had made allegations, L.M. told her brother what appellant had done to her, and her brother then told her mother. Her mother, after talking with

---

[2] Both of these friends, along with one of her friend's mother, testified at trial that L.M. told them about the assault and asked them not to tell anyone.

L.M., reported appellant's alleged assault of L.M. to the police. An investigation followed with a second indictment being issued in September 2002.

The two cases were consolidated, and after a four-day trial, the jury found appellant guilty on count one of both causes and appellant opted to be sentenced by the court. This appeal followed.

**ANALYSIS**

Appellant contends that (i) the trial court erred in failing to sever the trials of the two causes, (ii) his right to effective assistance of counsel was violated by his counsel's failure to litigate the admissibility of prior felony convictions and by eliciting a prior conviction on direct testimony, (iii) he was denied his right to a fair trial and due process by the prosecutor repeatedly eliciting inadmissible testimony, and (iv) the trial court committed reversible error by admitting improper opinion testimony.

*Failure to Sever the Two Causes*

In his first point of error, appellant complains of the trial court's failure to sever the two causes. At a pretrial hearing, the trial court granted the State's motion to consolidate the two cases "which arose out of the same criminal episode" pursuant to section 3.02 of the penal code and denied appellant's motion to sever. *See* Tex. Penal Code Ann. §§ 3.01, 3.02(a) (West 2003). Appellant argued in his motion to sever that consolidation would "unfairly prejudice" appellant and "he would not receive a fair trial." On appeal, appellant contends that severance was mandatory because the alleged offense against L.M. was committed in 1996, prior to the amendment of section

3.04 of the penal code, and that the prior version of the law mandated severance. *See* Tex. Penal

Code Ann. § 3.04 (West 1996).[3]

Appellant did not raise the legal theory he now raises on appeal in his motion or at

the hearing on his motion. Generally, an objection stating one legal basis may not be used to support

a different legal theory on appeal. *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996).

Because appellant did not present this legal theory to the trial court and his objection below does

not comport with his objection on appeal,[4] he has not properly preserved error on appeal. *See*

Tex. R. App. P. 33.1; *State v. Bailey*, 201 S.W.3d 739, 743 (Tex. Crim. App. 2006) (an appellate

court may not reverse a trial court's decision on a legal theory that was not presented to the

trial court).

Even if appellant properly preserved this complaint on appeal, we conclude that any

error in failing to sever is not reversible error. Assuming that severance was mandatory under the

1996 statute, to support reversal appellant must show that the error affected a substantial right. *See*

Tex. R. App. P. 44.2(b); *Llamas v. State*, 12 S.W.3d 469, 470-71 (Tex. Crim. App. 2000). "[T]he

proper standard of review to be used when determining if a substantial right is affected pursuant to

---

[3] Under section 3.04, defendants generally have the right to sever offenses that have been consolidated. Tex. Penal Code Ann. § 3.04(a) (West 2003). In 1997, exemptions to the right to severance were added to the statute, and one of the exemptions was prosecutions for child sex abuse crimes unless the trial court determined that the defendant or the State would be unfairly prejudiced by the joinder. *Id*. § 3.04(c); Act of June 13, 1997, 75th Leg., R.S., ch. 667, § 7, 1997 Tex. Gen. Laws 2252-53. The Act provided that it only applied to offenses committed after the effective date of the Act, September 1, 1997.

[4] Appellant concedes that he did not bring the mandatory severance provision in the 1996 version of the statute to the trial court's attention, "Although the court, the prosecutor, and Appellant's counsel all apparently neglected to examine the law in effect at the time of the commission of the offense alleged in . . . 1996 . . . , that law clearly mandated a severance."

6

a Rule 44.2(b) [harm] analysis is whether the error had a substantial or injurious effect or influence in determining the jury's verdict." *Llamas*, 12 S.W.3d at 470. Because it is probable that evidence from each offense would have been admissible in both trials had the offenses been tried separately, any severance error did not affect appellant's substantial rights. *See Dominguez v. State*, 62 S.W.3d 203, 208 (Tex. App.—El Paso 2000, pet. ref'd) (severance error harmless where evidence from each offense would have been admissible in separate trial of other offense).

Appellant's defensive theories included that L.M. and B.S. were not credible and that appellant was not the type of person to commit the charged offenses. To rebut appellant's defensive theories, it is probable that if there had been separate trials, the State would have been entitled to introduce evidence of the other similar offense in both trials. *See* Tex. R. Evid. 404(b), 403; *Moses v. State,* 105 S.W.3d 622, 627-28 (Tex. Crim. App. 2003) (testimony regarding two prior bribery attempts admissible to rebut defense contention); *Wheeler v. State*, 67 S.W.3d 879, 886-889 (Tex. Crim. App. 2002) (evidence of similar sexual abuse offense properly admitted to rebut defensive theory that defendant is not the type to abuse children). We, therefore, conclude that even if the trial court erred in failing to sever the two causes, the error was harmless.

Because we find appellant did not preserve this issue on appeal and any error by the trial court in denying the motion to sever did not affect a substantial right, we overrule appellant's first point of error.

### *Ineffective Assistance of Counsel*

In his second point of error, appellant urges that he received ineffective assistance of counsel because his trial counsel failed to challenge the admissibility of prior felony convictions

7

before eliciting them from appellant on direct. Because these convictions would not have been admissible based upon remoteness and appellant's credibility was essential to his defense, appellant contends that there is no objectively reasonable trial strategy for eliciting appellant's admission on direct.

The standard for testing claims of ineffective assistance of counsel is set out in *Strickland v. Washington*, 466 U.S. 668 (1984), and adopted for Texas constitutional claims in *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). To prevail on a claim of ineffective assistance, an appellant must, by a preponderance of the evidence, prove that (i) trial counsel's performance fell below an objective standard of reasonableness, and (ii) counsel's deficient representation prejudiced appellant's defense. *Strickland*, 466 U.S. at 687-88; *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).

To meet this burden, an appellant must show that the attorney's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for the attorney's deficiency, the result of the trial would have been different. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). If "there is at least the possibility that the conduct could have been legitimate trial strategy, we will defer to counsel's decisions and deny relief on an ineffective assistance claim on direct appeal." *Ortiz v. State*, 93 S.W.3d 79, 88-89 (Tex. Crim. App. 2002).

When appellant testified, defense counsel asked him to confirm that he had been convicted on May 23, 1989 for four offenses of forgery in Virginia. The convictions were for the offense of check forgery, and the offenses were all committed in or around January 1989. By

8

asking this question, the door was opened for the prosecutor to cross-examine appellant about the convictions.

The record is silent why defense counsel did not challenge the admission of the convictions and why he proceeded affirmatively to elicit testimony of the convictions. Defense counsel could have had valid strategic reasons for introducing the convictions in appellant's direct testimony. This strategy is not inconsistent with his defensive theories. He may have wanted to show appellant as candid and open with the jury and that his only problems with the law occurred when he was young and were for nonviolent crimes. He may have wanted to emphasize there were no sexual abuse convictions against him—that his criminal record was not consistent with a sexual abuser's tendency to have repeated and numerous incidents.

In closing argument, defense counsel emphasized that appellant paid for his mistakes in the past and that the allegations against him were not consistent with his actions as a good family man:

> [F]or somebody to take the risks that they allege that [appellant] took, somebody that would risk all that he did for those two short instances, to put everything on the line for that, you would see something, there is a deviancy there that would come out that somehow people would see.
>
> . . . .
>
> [Appellant] made a mistake in the past. He made a mistake with these checks. He paid for it. It doesn't mean he did this, as that charge will tell you. You can't look at it that way. He is a hard worker. He has had the same job for 20 years, he is a good father, good stepfather, . . .

9

Appellant failed to show that counsel was not engaging in a legitimate trial strategy to demonstrate that appellant is not the type of person that would commit sexual offenses against children. Trial counsel's possible reasons are speculative; however, they demonstrate the record is inadequate to show that counsel's performance was deficient or prejudicial to appellant. *See Goodspeed v. State*, 187 S.W.3d 390, 394 (Tex. Crim. App. 2005). We overrule appellant's second issue.

### Lay Opinion Testimony of L.M.'s Truthfulness

In his third point of error, appellant contends that he was denied a fair trial and due process by the "prosecutor's repeated elicitation of inadmissible testimony," and, in his fourth point of error, he contends that the trial court committed reversible error in overruling appellant's objections to inadmissible opinion testimony. In both his third and fourth points of error, his complaint focuses on lay opinion testimony from two witnesses that L.M. is truthful and that the witnesses believed that appellant had assaulted L.M.

One of the witnesses was the mother of a girl who was three years older than L.M. The girl also testified at the trial, but appellant has not asserted error on appeal concerning the girl's testimony. The girl lived with L.M. for a few months in high school and during the time that she was living with L.M., L.M. told the girl about appellant's assault on L.M. The witness testified that her daughter then told her about the incident, and the witness believed L.M.'s allegations. According to the witness, L.M. was a truthful person and "not a liar." The other witness was a friend from a church youth group. He testified that when he was in high school L.M. told him that she had been "abused" by "John." He also testified that he believed her claim and that L.M. was truthful: "I feel

10

that she would tell the truth in every situation. I have seen her in many situations, and she has never once lied to me or anybody around me."

Appellant failed to preserve either point of error on appeal. Appellant failed to timely object to the admission of the witnesses' testimony. The only overruled objection defense counsel references on appeal concerns the mother's testimony on redirect. The trial court overruled the objection because the witness was restating previous testimony that was admitted without objection. Appellant also failed to raise prosecutorial misconduct or due process claims with the trial court. Tex. R. App. P. 33.1; *Briggs v. State*, 789 S.W.2d 918, 924 (Tex. Crim. App. 1990) (defendant charged with sexual abuse of child waived any claim that admission of evidence violated his due process rights by failing to object that his constitutional rights were being violated). By appellant's failure to object in a timely manner, appellant waived complaint on appeal.

Even if appellant preserved his objections to the two witnesses' testimony on appeal, we find that it was not an abuse of discretion for the trial court to admit their testimony concerning L.M.'s truthfulness. *Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999) (a trial court's decision to admit evidence is reviewed under an abuse of discretion standard).

Appellant contends that because L.M.'s character was not under attack for truthfulness at the time the testimony of the two witnesses was offered, that the testimony was not admissible under rule 608(a) of the rules of evidence. *See* Tex. R. Evid. 608(a)(2). We disagree. A central defensive theory throughout the trial was that L.M. and B.S. were not to be believed and that they fabricated the charges against appellant. Defense counsel began with the theme of false accusations in voir dire:

11

[D]o kids lie? We all know that, right? There may be hundreds of different reasons why kids or anybody else might lie. Is that fair enough? That is something that everybody knows from their own personal life.

. . . .

Has anybody ever heard of false accusations of sexual abuse? Have you heard of those kind of things that have happened? I think—about the cardinal in Chicago and later they said it didn't happen.

Defense counsel continued with the theme in his opening statement by asking the jury to consider the conduct of L.M. and B.S. before and after each alleged incident, and that their conduct was not consistent with their allegations:

[L.M.] alleges that on one day in August of 1996, John Lopez touched her, . . . There will be, I believe, no evidence that there was anything before, no evidence that there was anything after this. It is one incident that she says this happened, no leadup, no followup, no nothing. . . . [B.S.] alleges, this is difficult for me to understand, either in May of 2000 or May of 2001 he touched her . . . , and again, I think the evidence will show there was no leadup to this, nothing happened before, nothing happened after, just an isolated incident that they picked out. These two girls had similar relationships with this family, . . . There was a lot of interaction with everybody in the family . . . before and after the incident. The actions, you know, again, it would be hard for us to prove a negative, but the actions afterwards would indicate to you I think that this didn't take place.

The theme that L.M. and B.S. were not credible continued throughout the trial. In particular as to L.M., defense counsel during cross-examination questioned her on possible motives for lying about her allegations against appellant and how her conduct and various statements were inconsistent with her allegations. Defense counsel elicited from L.M. that she was upset with the Lopez family over two separate events. L.M. admitted that appellant's wife had threatened her with accusations that L.M. had sexually assaulted appellant's daughter. L.M. also admitted that she had

12

been upset by an incident involving her brother and appellant's daughter. Appellant's wife accused L.M.'s brother of "grabbing or hitting" one of appellant's daughters in "the private area," and the police were called.

Defense counsel also questioned L.M. about inconsistencies in her statements and conduct. He questioned her about her statement to CPS, her statement to the police, and her statements to others. Defense counsel elicited that the alleged assault was a one-time incident and that L.M. maintained a relationship with appellant's family after the incident. L.M. also conceded that she did not come forward with her allegations until after she was aware of B.S.'s allegations.

The defense raised L.M.'s character for truthfulness in argument and during cross-examination. Because L.M.'s character for truthfulness was attacked, the lay witness opinion testimony that L.M. was truthful was properly admitted. *See* Tex. R. Evid. 608(a). Even if this testimony should have been excluded along with the testimony that the witnesses believed L.M.'s allegations, however, we conclude that there was no reversible error.

The admission of testimony that should have been excluded is disregarded on appeal unless it affected appellant's substantial rights. *See* Tex. R. App. P. 44.2(b). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim App. 1997). The appellate court reviews the entire record to assess the likelihood that the jury's decision was adversely affected by the error. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). After conducting this review, we find the evidence sufficiently strong to support the jury verdict and conclude that the admission of the testimony was not reversible error.

13

The fact that witnesses with close relationships to L.M. believed L.M. should not have been surprising to the jury and it was likely that the jury viewed the testimony with "natural skepticism." *See Fisher v. State*, 121 S.W.3d 38, 41 (Tex. App.—San Antonio 2003, pet. ref'd) (jury would expect aunt and legal guardian to testify that complainant was truthful). L.M. also was subject to cross-examination by defense counsel on inconsistent statements and behavior. The jury had ample opportunity to evaluate her credibility independent of the two witnesses. *Arzaga v. State*, 86 S.W.3d 767, 777 (Tex. App.—El Paso 2002, no pet.) (court concluded that admitted opinion testimony did not have a substantial and injurious effect on jury's verdict because the jury had ample opportunity to judge credibility independent of opinion testimony).

With credibility a central issue, the jury had ample evidence to assess appellant's credibility as well as that of L.M. and B.S. Appellant chose to testify on his own behalf. The jury also had expert testimony concerning the behavior of children that have been sexually abused, and evidence of L.M. and B.S.'s conduct was consistent with behavior of children that have been sexually abused and not consistent with children that had fabricated a charge. L.M. and B.S. both provided very specific details of the assault. Neither wanted to pursue the allegations against appellant. Neither wanted to tell anyone what had happened, and they were fearful to come forward. Upon a review of the record in its entirety, we overrule appellant's third and fourth points of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgments of conviction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:   August 1, 2007

Do Not Publish

15